25CA2401 Peo in Interest of ND 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2401
Pueblo County District Court No. 25MH30118
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of N.D.,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 N.D. appeals the district court's order authorizing the involuntary administration of medications under the four-part test articulated in *People v. Medina*, 705 P.2d 961 (Colo. 1985). He contests the sufficiency of the evidence only as to the fourth *Medina* element. We conclude that sufficient evidence supports this element. Accordingly, we affirm.

## I. Background

¶ 2 N.D. was committed to the Colorado Mental Health Hospital in Pueblo (the hospital) after he was found not guilty by reason of insanity in an El Paso County criminal case. He has been confined to the hospital since October 1, 2025, and has been diagnosed with psychosis not otherwise specified. Since his admission to the hospital, he has deteriorated significantly with intensifying symptoms including pressured speech, disorganized thinking, poor sleep, grandiose delusions, paranoia, agitation, and response to internal stimuli. He has told hospital staff that he is a "world-class martial artist . . . trained to snap necks." In addition, he told a staff member, "I was hoping to get your help and learn how to break necks better. I have killed over 1000 people in my life, and I just could use the extra help and training."

¶ 3    N.D. has consistently refused medications, so his treating psychiatrist, Dr. Hareesh Pillai, requested an order authorizing their involuntary administration.  The People petitioned the district court for review of N.D.'s refusal.  After a hearing, the court authorized the involuntary administration of olanzapine (Zyprexa), paliperidone (Invega and Invega Sustenna), and lithium; and all laboratory work, physical assessments, and appropriate testing necessary to monitor the medications, including any potential side effects.

## II.    Legal Principles and Standard of Review

¶ 4    A district court may authorize the involuntary administration of medication if the petitioning party establishes each of the following elements by clear and convincing evidence: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment

is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment.  *Id.* at 973.

¶ 5      We assess whether the evidence, considered as a whole and viewed in the light most favorable to the People, sufficiently supports the court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test.  *Id.* at ¶ 30.

¶ 6      Application of the *Medina* test is a mixed question of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo.  *Id.*  It is the sole province of the fact finder to resolve testimonial conflicts and to determine the weight and credibility of the evidence.  *See People in Interest of D.N.W.*, 2024 COA 129, ¶ 20 (appellate courts must defer to a district court's determinations of witness credibility and the weight afforded to the evidence).  Where the evidence supports the district court's findings and conclusions, we may not substitute our judgment for that of the district court.  *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

### III.  The Fourth *Medina* Element

¶ 7    The fourth *Medina* element requires a court to determine whether the patient's refusal of treatment "is bona fide and legitimate."  *Medina*, 705 P.2d at 974.  If so, the court must determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution."  *Id.*

¶ 8    N.D. expressed a desire to refuse medications due to both unwanted side effects and religious beliefs.  Although the district court did not find all of N.D.'s objections credible, it assumed for the purposes of analysis that all of his stated reasons were bona fide and legitimate.  Nonetheless, the district court found that N.D.'s prognosis without treatment is so unfavorable that his personal preference must yield to the state's interest in preserving his health and protecting his safety and the safety of others in the institution.  Because the record supports the court's determination, we will not disturb it.

¶ 9     The district court credited Dr. Pillai's hearing testimony that the failure to medicate N.D. would be more harmful than the risks posed by the requested medications.  In support of this opinion, Dr. Pillai testified that, without medication, N.D. continues to experience severe mental health deterioration and refuses adequate food and water, thus posing a serious risk to himself.  Indeed, roughly a week before the hearing, N.D.'s treatment team expressed "extreme concern" about his food and water intake and reported rapid weight loss — representing seven percent of N.D.'s body weight — in the roughly two months he had been at the hospital.  The district court expressly noted N.D.'s failure to adequately nourish himself in weighing whether N.D.'s personal preference must yield to the state's interest in preserving his life and health.

¶ 10     Similarly, the court noted, the hospital has an interest in protecting the safety of those in the institution.  N.D. himself testified that he would "fight back" if hospital staff attempt to medicate him.  And he has made statements that he has killed over a thousand people.  Although the court acknowledged that these latter statements were likely hyperbolic, it nonetheless found that the state's interest in protecting the safety of those in the institution

was also sufficient to override any bona fide and legitimate reason N.D. has in refusing treatment.

¶ 11 Under these circumstances, we perceive no error in the court's determination that N.D.'s prognosis without the requested medications was so unfavorable that his reasons for refusing medication must yield to the state's legitimate interests in preserving his life and health and protecting the safety of those in the institution. Although N.D. asserts that the district court erred in finding that his interests in refusing medication were outweighed by the state's, we may not reweigh the evidence. *See D.N.W.*, ¶ 20.

## IV. Disposition

¶ 12 The order is affirmed.

JUDGE DUNN and JUDGE BERNARD concur.